# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEXANDER THOMAS AND STACEY THOMAS | CIVIL ACTION |
| VERSUS | NO. 2:20-cv-2425 |
| FRANCES VARNADO (IN HER OFFICIAL CAPACITY) AND WASHINGTON PARISH SCHOOL BOARD | JUDGE: EEF<br>MAG. JUDGE: KWR |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The plaintiffs, Alexander Thomas and Stacey Thomas, seek a preliminary injunction ordering the defendants, Frances Varnado (in her official capacity) and the Washington Parish School Board, to allow the plaintiffs's son N.T. to re-paint the picture of President Trump the defendants ordered painted over. The injunction should issue because N.T. has a First Amendment right to core political speech which the defendants may not limit as to viewpoint, and may not limit at all without a showing that the speech is unlawful, obscene, threatening, or plainly offensive, or is otherwise materially disruptive or materially interferes with school activities, or is likely to be construed as the school's or the School Board's own speech. The defendants cannot make such a showing, and N.T. will suffer irreparable harm if a preliminary injunction is not granted.

## 1. FACTUAL BACKGROUND

The plaintiffs, Alexander Thomas and Stacey Thomas, are married to each other, and are the parents of N.T., who is a 17-year old senior student at Pine Jr/Sr High in Franklinton, LA. The defendant, Frances Varnado, in her official capacity, is the Superintendent of Schools for the Washington Parish School System. The defendant, Washington Parish School Board, is a political

subdivision of the State of Louisiana which governs the Washington Parish School System. Pine Jr/Sr High is a school within the Washington Parish School System.

Washington Parish School System has a tradition and policy of allowing entering high school seniors to pay $25 in order to paint their own parking spaces. On or about July 15, 2020, Pine Jr/Sr High posted on its website "Student Parking Space Rules for Seniors Only" (attached as Exhibit A). These rules state that "[t]he purpose of allowing students to paint their own parking spot is aimed at improving school pride and camaraderie." The rules prohibit offensive language, pictures, or symbols, negative or rude language, and the use of another person's (specifically, a boyfriend's or girlfriend's) name. The rules also state that "all painted spaces must be approved by administration."

On July 31, 2020, N.T. showed the principal of Pine Jr/Sr High a tee shirt with a picture of what he was going to paint. The principal approved the picture, which was a stylized picture of Pres. Donald Trump with a Stars-and-Stripes bandana and sunglasses. N.T. intended the picture to be an expression of support for Pres. Trump. On August 4-6, a friend of N.T.'s painted the parking space for him at a cost of $200 (see photo attached as Exhibit B).

On August 14, 2020, the principal informed N.T.'s father, Alexander Thomas, that the School Board had voted to have the picture removed and that N.T. needed to paint over it. Shortly afterward the principal informed N.T. that the picture was already painted over. N.T. went to the School Board office and met with the Superintendent, Frances Varnado. The Superintendent told N.T. that the School Board considered his painting too political. The Superintendent later reiterated this to N.T.'s parents. N.T.'s parking space remains a painted-over gray (Exhibit C), while other student parking spaces have various colorful and fanciful designs, some with sayings

or quotes, including a rainbow flag and a stylized Japanese flag. (see, e.g., photos attached as Exhibits D through G).

## 2. N.T.'s CORE POLITICAL SPEECH RIGHTS ARE HIGHLY PROTECTED

The First Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, prohibits Congress and the States from "abridging the freedom of speech." Supreme Court decisions have created a rough hierarchy in the protection of speech under the First Amendment. "Core political speech" occupies the highest, most protected position. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 422, 112 S.Ct. 2538, 2564, 120 L.Ed.2d. 305 (1992) (Blackmun, J., concurring). N.T.'s picture of President Trump, intended to express support for the President's re-election candidacy, is core political speech entitled to the highest protection.

## 3. THE PARKING SPACES ARE A LIMITED PUBLIC FORUM

The parking spaces are public property opened up and made available to a limited group of people for limited uses. They are thus properly categorized as a "limited public forum." See, e.g., *Good News Club v. Milford Central School*, 533 U.S. 98, 105, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001) (school meeting rooms); *Demmon v. Loudon County Public Schools*, 342 F.Supp.2d 474, 481 (E.D.Va. 2004) (commemorative bricks in a walkway); *Kiesinger v. Mexico Academy and Central School*, 427 F.Supp.2d 182, 190-191 (N.D. N.Y. 2006) (commemorative bricks in a walkway).

When a state actor such as the School Board establishes a limited public forum, it is not required to and does not allow persons to engage in every type of speech. The state actor may be justified "in reserving [its forum] for certain groups or for the discussion of certain topics." *Rosenberger v. Rector and Visitors of University of Virginia,* 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). The state actor's power to restrict speech, however, is not without limits.

3

The restriction must not discriminate against speech on the basis of viewpoint, *Id.*, and the restriction must be "reasonable in light of the purpose served by the forum." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

### 4. N.T.'s PICTURE IS PURE STUDENT EXPRESSION

Supreme Court case law has identified four categories of student speech: (1) vulgar, lewd, obscene, or plainly offensive speech under *Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); (2) school-sponsored speech under *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); (3) government speech; and (4) pure student expression under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

There is nothing obscene or plainly offensive about N.T.'s picture. It is colorful and stylized, but so are many of the other parking space paintings. See, e.g., Exhibits C through E. Nobody looking at the painted student parking spaces would reasonably conclude they express the official views of the School Board or that the School Board is sponsoring or endorsing the views expressed in the paintings. N.T.'s speech rights should therefore be analyzed as pure student expression under *Tinker*.

*Tinker* and its progeny were thoroughly summarized by the Fifth Circuit in *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011), *cert. denied*, 567 U.S. 905, 132 S.Ct. 2740 (2012):

> . . . the Supreme Court held over forty years ago that the First Amendment prohibits viewpoint discrimination against all students in public schools, absent material and substantial disruption. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

*Id.* at 506, 89 S.Ct. 733. In *Tinker,* the principals of the Des Moines schools became aware of a plan by students to wear armbands protesting the Vietnam War. *Id.* at 504, 89 S.Ct. 733. They adopted a policy that any student wearing such an armband would be asked to remove it or face suspension. *Id.* Seven students decided to defy the policy, including eight-year-old Paul Tinker, eleven-year-old Hope Tinker, and thirteen-year-old Mary Beth Tinker. *Id.* at 516, 89 S.Ct. 733 (Black, J., dissenting).

The Supreme Court upheld the rights of those students against the school's efforts to prohibit the students from speaking their minds, holding that "[i]n the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." *Id.* at 511, 89 S.Ct. 733. The Court even characterized this holding as "obvious":

If a regulation were adopted by school officials forbidding discussion of the Vietnam conflict, or the expression by any student of opposition to it anywhere on school property except as part of a prescribed classroom exercise, it would be obvious that the regulation would violate the constitutional rights of students, at least if it could not be justified by a showing that the students' activities would materially and substantially disrupt the work and discipline of the school.

*Id.* at 513, 89 S.Ct. 733.

Thus, under *Tinker,* school officials may not restrict student speech on school property solely on the basis of viewpoint, unless there is a showing of material and substantial disruption. *See id.*

Since *Tinker* . . . the Supreme Court has consistently reinforced the notion that First Amendment rights are of paramount importance in school facilities. *See, e.g., Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 112, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (holding that a school violated the First Amendment when it prohibited a private Christian organization for children aged six to twelve from holding meetings at the school for the purpose of singing Christian songs, hearing Bible lessons, and memorizing scripture); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384, 393–94, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (holding that the prohibition of Christian perspective speech in a school facility constituted unconstitutional viewpoint discrimination); *Widmar v. Vincent,* 454 U.S. 263, 265, 267, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (holding that a public university could not "close its facilities to a registered student group desiring to use the facilities for religious worship and religious discussion").

In its most recent school speech case, *Morse v. Frederick,* the Supreme Court reaffirmed *Tinker*'s maxim that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Morse,* 551 U.S. at 422,

5

> 127 S.Ct. 2618 (Alito, J., concurring). Justice Alito's controlling opinion observed that giving "public school authorities a license to suppress speech ... based on disagreement with the viewpoint expressed" would "strike[ ] at the very heart of the First Amendment." *Id.* at 423, 127 S.Ct. 2618. Thus, "[w]hen the government targets ... particular views taken by speakers on a subject, the violation of the First Amendment is ... blatant." *Rosenberger,* 515 U.S. at 829, 115 S.Ct. 2510; *see also id.* ("Viewpoint discrimination is ... an egregious form of content discrimination.").

*Morgan v. Swanson*, 659 F.3d 359, 402-403 (5th Cir. 2011), *cert. denied*, 567 U.S. 905, 132 S.Ct. 2740 (2012). The upshot is that the defendants cannot prohibit N.T. from painting his parking space with a picture of Pres. Trump unless it can prove that: (1) it is not discriminating against N.T. based on his viewpoint, and (2) the painting is materially disruptive or materially interferes with school activities.

5. THE DEFENDANTS ENGAGED IN PROHIBITED VIEWPOINT DISCRIMINATION

Among the other parking space paintings the defendants have allowed are a rainbow flag with stylized musical clefts (Exhibit E) and a Japanese flag with some writing (Exhibit F). The rainbow flag is by now universally known as an expression of LGBT advocacy and pride. The Japanese flag is the flag of a friendly sovereign nation but may also be a political statement. Allowing those paintings but not allowing N.T.'s would seem to be viewpoint discrimination, which is prohibited.

6. THE DEFENDANTS CANNOT PROVE MATERIAL DISRUPTION OR INTERFERENCE

Even if the defendants are not engaging in viewpoint discrimination, they cannot prove that N.T.'s picture of Pres. Trump would cause material disruption or interfere with school activities. In other words, the defendants cannot prove that their action against N.T.'s painting was "caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). "Although school officials may

prohibit speech based on a forecast that the prohibited speech will lead to a material disruption, the proscription cannot be based on the officials' mere expectation that the speech will cause such a disruption." *A.M. ex rel. McCallum v. Cash,* 585 F.3d 214, 221 (5th Cir. 2009).

Furthermore, the defendants prove that a picture of Pres. Trump is any less consistent with "school pride and camaraderie" than a rainbow flag, or a Japanese flag, or the words "Occasionally I'll hit somebody with my car, so sue me." The only potentially disruptive parking space might be the one painted with the disability symbol (Exhibit G), which could easily mislead the public into thinking that space is available to anybody with a disability permit.

### 7. THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE MET

Based on the above, the plaintiffs are likely to succeed on the merits. A substantial threat of harm exists, because if the school year comes and goes with N.T. unable to paint his parking space like all the other students, he will have lost out on that opportunity forever. The defendants will suffer no harm at all if N.T. is allowed to paint his parking space. And an injunction will not only not harm the public interest, it will promote the public interest in free speech.

Respectfully submitted:

s/Yigal Bander
Yigal Bander  #24953
Manasseh, Gill, Knipe & Belanger, P.L.C.
8075 Jefferson Highway
Baton Rouge, LA  70809
Phone: (225) 383-9703
Fax: (225) 383-9704
Email: yigal@manassehandgill.com