UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALEXANDER THOMAS AND | * | |
| STACEY THOMAS | * | CIVIL ACTION NO. 2:20-cv-2425 |
| | * | |
| VERSUS | * | |
| | * | |
| FRANCES VARNADO | * | JUDGE ELDON E. FALLON |
| (IN HER OFFICIAL CAPACITY) | * | |
| AND WASHINGTON PARISH | * | |
| SCHOOL BOARD | * | |
| | * | MAG. JUDGE KAREN WELLS ROBY |
| * * * * * * * * * * * * * * * * * | | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants, Ms. Frances Varnado and the Washington Parish School Board, respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs are not entitled to the relief sought because Ms. Varnado, the Superintendent, has the authority under the Constitution to limit student speech when it is reasonably foreseeable that the speech would cause "substantial disruption of or material interference with school activities." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 222 (5th Cir. 2009). Here, the Superintendent properly exercised her constitutional authority and Plaintiffs' Motion for Preliminary Injunction must be denied.

**I.     Legal Standard for a Preliminary Injunction under Rule 65.**

An injunction is an extraordinary equitable remedy and should not issue except upon a clear showing of possible irreparable injury to the movant. *Lewis v. S.S. Baune*, 534 F.2d 115, 1121 (5th Cir. 1976). To obtain a preliminary injunction, a movant must demonstrate four elements: (a) a substantial likelihood of success on the merits, (b) a substantial threat of irreparable injury to the movant if the injunction is not granted, (c) a balance of hardships in favor of the movant, and (d) no disservice to the public interest if the injunction is granted. *Canal Authority of*

*the State of Florida v. Calloway*, 489 F.2d 567, 772 (5th Cir. 1974); *DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).

The party seeking the injunction bears a *heavy* burden of persuasion on all four elements. *Kahara Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003); *Hardin v. Houston Chronicle Publishing Co.*, 572 F.2d 1106, 1107 (5th Cir.1978). Given its extraordinary character, a preliminary injunction should be granted only if the movant has clearly carried the burden of persuasion on all four prerequisites. A grant of a preliminary injunction is treated as an exception rather than the rule. *Id.* at 364; *Mississippi Power and Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1974); *PCI Transportation Inc. v. Ft. Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005). If the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). When the movant fails to prove that, absent an injunction, irreparable injury will result, the preliminary injunction should be denied. *Id.*

**II.     Factual Background**

Plaintiffs' son, N.T., is a senior student at Pine Jr/Sr High, which is within the Washington Parish School System. Pine Jr/Sr High has students of various ethnic and cultural backgrounds, including black, white, and Latino students. Pine Jr/Sr High allows their senior students to pay $25 to paint their designated parking spaces in the school's parking lot. This tradition is aimed toward promoting "school spirit and camaraderie" among students. *See* Ex. A to Plaintiffs' Motion for Preliminary Injunction, R. Doc. 5-3. For this reason, Pine Jr/Sr High places certain non-exclusive restrictions on what students are allowed to paint. For example, Pine Jr/Sr High prohibits students

from painting offensive language, pictures, or symbols; negative or rude language, and other people's names (specifically providing that significant others' names are not allowed). Additionally, Pine Jr/Sr High requires students to obtain administrative approval for their intended paintings. Pine Jr/Sr High made clear that any prohibited items would be painted over at the discretion of the administration, and that students would not be permitted to repaint their parking space,[1] nor would they be issued a refund. *See* Ex. A to Plaintiffs' Motion for Preliminary Injunction, R. Doc. 5-3.

N.T. participated in the parking space painting event. He chose to paint his parking space with a portrait of President Trump wearing an American flag bandana and sunglasses. This is a portrait affiliated with a movement known as "Merica," which has racial undertones.

The principal of Pine Jr/Sr High approved the painting. However, neither the Superintendent nor the members of the School Board learned about the portrait until after it had been completed. The Superintendent learned of the painting after the principal called her to inform her that a member of the School Board had concerns about it. The Superintendent then made the decision to have the painting painted over after carefully considering the board member's concerns and the current tumultuous and highly charged political environment present in this country and within the Washington Parish community, including Pine Jr/Sr High. Knowing of the racial division caused by this election, the Superintendent was concerned that the painting would cause further division and disruption among students—similar to that experienced within the school, Parish, community, and on social media—if it was allowed to remain in the school parking lot. As a result, N.T.'s Trump portrait was painted over with gray paint.

---

[1] "All painting must be completed on the days designated. Students will not be allowed to alter their spot after the dates given." *See* Ex. A to Plaintiffs' Motion for Preliminary Injunction, R. Doc. 5-3.

Plaintiffs now seek an injunction forcing the School Board and its superintendent to allow their son, N.T., to repaint the portrait of President Trump on his designated parking space in the Pine Jr/Sr High parking lot, alleging that the School Board's actions violated his First Amendment rights.

### III. Summary of Argument

Plaintiffs are not entitled to an injunction because they have completely failed to carry their heavy burden to establish any of the four elements necessary for the issuance of preliminary injunction. Plaintiffs cannot prevail on the merits of their case as a matter of law because a review of the facts show that Defendants' action of painting over N.T.'s Trump portrait was constitutional. Defendants' actions, as shown below, were taken without regard to any specific viewpoint, and only after a careful consideration about the likelihood of material and substantial disruption of school discipline that would result if the portrait remained on school property. This was a permissible restriction on student speech. Because there was no unconstitutional action, Plaintiffs cannot prove irreparable injury or legitimate harm or show that the injunction sought would not disserve the public interest. To the contrary, an injunction would allow the federal court to intrude into the school board's internal affairs and management, which would result in harm to Defendants that would greatly outweigh any harm to Plaintiffs and be a disservice to the public interest. For these reasons, as more fully set forth below, Plaintiffs' motion for preliminary injunction should be denied.

### IV. Plaintiffs have not shown a substantial likelihood of success on the merits.

**A. Constitutional protection of student speech is not absolute, and the School Board and its official are entitled to impose reasonable restrictions on student speech and expression in order to prevent material disruption**.

The First Amendment precludes the government from abridging the freedom of speech. U.S. CONST. amend. I. "[A]s a general matter, 'the First Amendment means that government has

4

no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 (1983)). However, "[w]hile certain forms of expressive conduct and speech are sheltered under the First Amendment, constitutional protection is not absolute, especially in the public school setting," where "[e]ducators have an essential role in regulating school affairs and establishing appropriate standards of conduct." *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 442 (5th Cir. 2001) (citing *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 681, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)).

In the seminal case on student speech, *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the Supreme Court held that "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students," but that these rights must be balanced with "the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in schools." *Id.* at 507. Therefore, to constitutionally prohibit student speech or expression, school officials are required to "show that [their] action[s] [were] caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221 (5th Cir. 2009) (quoting *Tinker*, 393 U.S. at 508, 89 S.Ct. 733).

For example, under the Tinker standard, "conduct by the student, in class or out of it, which for any reasons—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves a substantial disorder or invasion of the rights of others is . . . not immunized by the constitutional guarantee of freedom of speech." *Tinker,* at 513 (citing *Blackwell v. Issaquena Cty. Bd. of Edu.*, 363 F.2d 749 (5th Cir. 1966)). In their Motion, Plaintiffs acknowledge that school

officials are entitled to restrict student speech—*even those purely based on viewpoint*[2]—when the speech would cause material and substantial disruption. However, what they failed to recognize is that the specific disruption of which they are reasonably concerned need not to have already occurred. *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221–24 (5th Cir. 2009) ("School officials are not required to wait for the speech to cause disruption before acting."). Indeed, school officials may properly restrict student speech where facts might reasonably lead them to "forecast substantial disruption of or material interference with school activities," or where the speech at issue would "impinge upon the rights of other students." *Tinker,* at 509, 514 (emphasis added). This scenario was addressed by the Fifth Circuit fairly recently in *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221–24 (5th Cir. 2009).

In *Cash*, high school students, by and through their parents, brought a § 1983 action against their school principal and the school board seeking damages and permanent injunctive relief on grounds that the school policy's prohibiting the display of the Confederate flag on school grounds violated their First Amendment rights. The Fifth Circuit affirmed summary judgment in favor of the defendants, finding that the defendants reasonably anticipated that visible displays of the Confederate flag would cause substantial disruption of or material interference with school activities, including disruption based on racial differences.

The Fifth Circuit further explained that *Tinker* does not require school officials to wait for the speech to cause disruption before acting. And "[w]hile school officials must offer facts to support their proscription of student speech, this is not a 'difficult burden,' and 'their decisions will govern' if they are 'within the range where reasonable minds will differ[.]'" *Id.* (quoting

---

[2] *See* Plaintiffs' Motion for Preliminary Injunction, R. Doc. 5-1 at p. 5, 6.

*Shanley v. Northeast Indep. Sch. Dist.,* 462 F.2d 960, 970 (5th Cir. 1972) and *Butts v. Dallas Indep. Sch. Dist.,* 436 F.2d 728, 732 (5th Cir. 1971), respectively).

Applying *Tinker*, the Fifth Circuit in *Cash* gave great weight to the school board's testimony and found that the following facts reasonably supported the school board's prohibition on displaying the Confederate flag on school grounds: (1) some view the Confederate flag in certain circumstances as a symbol of racism and intolerance, regardless of whatever other meanings may be associated with it; (2) elements of the student body have continually manifested racial hostility and tension, including through racially hostile graffiti and vandalism, racial epithets, and a physical confrontation between white BHS students and the African–American students of another high school, with some events including the use of the Confederate flag; (3) as recently as spring 2006, Confederate flags were flown over the flagpole on Martin Luther King Jr. Day and a white student simulated the lynching of an African–American student. Although the school board in *Cash* showed that the proscribed speech has been disruptive in the past, the Fifth Circuit made a point to note that "*Tinker* does not require a showing of past disruption; administrators can also meet their burden by establishing that they had a reasonable expectation, grounded in fact, that the proscribed speech would probably result in disruption." *Id.*

### B. Like in *Cash,* Defendants' action was reasonably aimed toward preventing material disruption.

Defendants' action was constitutional permissible under *Tinker* and *Cash*. As in *Cash*, the Defendants' action of painting over N.T.'s Trump portrait was a carefully considered decision based on reasonable concerns that allowing the painting to remain on school property would result in material and substantial disruption. The decision to remove the painting was based on the fact that the upcoming election is particularly contentious and has resulted in significant, problematic divisions not only throughout the country, but also within the Washington Parish community. The

fact that the portrait originally portrayed the word, "Merica," a word that has racial connotations, underscored this concern. The sole reason Defendants removed the painting was directly due to these known tensions and based on substantial and legitimate concerns that the painting would cause a divide among the student population. Defendants correctly point out that the portrait and these concerns directly contradict the sole purpose of allowing students to paint their parking spots, which was to "improv[e] school pride and camaraderie." *See* Ex. A to Plaintiffs' Motion, R. Doc. 5-3.

Defendants' concerns about the potential disruption were not only reasonable, but have been proven to be legitimate based on scenarios that have played out in other schools across this country. For example, on August 17, 2020, just days after the School Board painted over N.T.'s Trump portrait, news broke about a "Trump 2020" student-painted parking space being vandalized at a Texas public high school.[3] Lubbock-Cooper High School similarly allowed students to decorate and paint their reserved parking spots before the school year began.[4] This year, a group of students spent over $750 to paint their connecting parking spots to spell out "TRUMP 2020."[5] The parking spots were vandalized overnight with spray painted phrases including, "BLM," "FREE THE FAMALIES," "#SAVEOURCHILDREN," "#POC."[6] One parent released a statement to the press stating, "Their spaces have been completely vandalized and all boys have been threatened."[7] The School Board's actions here were reasonably intended to prevent this exact scenario.

---

[3] Gray News Staff, KBTX-TV, *'Trump 2020' designed parking spaces vandalized at Lubbock-Cooper High School in Texas* (Aug. 17, 2020, 3:31 p.m.), *available at* https://www.kbtx.com/2020/08/17/trump-2020-designed-parking-spaces-vandalized-at-lubbock-cooper-high-school-in-texas/.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

Based on the foregoing, the School Board's action of painting over the Trump "Merica" portrait was permissible in light of the material and substantial disruption that would likely ensue if the painted spot was allowed to remain. For this reason, the School Board did not violate N.T.'s First Amendment rights, and Plaintiffs cannot succeed on the merits of their claim.

### C. Defendants' action was a reasonable, viewpoint-neutral, time/place/manner restriction.

"[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 394, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993). Plaintiffs claim that Defendants engaged in viewpoint discrimination by painting over N.T.'s Trump portrait, while permitting student paintings of musical clefts with rainbow-colored backgrounds, a quote from the show "The Office," and a Japanese flag with writing. Plaintiffs suggest that the musical note painting is an expression of LGBT advocacy and pride, while the Japanese flag may also be a political statement. These allegations are insufficient to demonstrate that Defendants engaged in impermissible viewpoint discrimination. Specifically, Plaintiffs cannot show how Defendants favored some student political viewpoints at the expense of N.T.'s when the paintings are completely unrelated, and have no common theme.

Moreover, Defendants' decision to remove N.T.'s portrait had nothing to do with the particular viewpoint expressed or the fact that it was pro-Trump. Indeed, if a N.T. or another student painted a portrait of Joe Biden that, too, would have been removed out of concerns that it would cause substantial and material disruption, as explained below. Absolutely no viewpoint favoritism or discrimination played a role in Defendants' decision to paint over N.T.'s parking space. Rather, the decision was based on the time, place, and manner of the expression because the painting's presence in the school parking lot increased the risk of vandalism, destruction of

9

property, and fighting where it would more difficult to prevent or control. For these reasons, Defendants did not engage in viewpoint discrimination by painting over N.T.'s parking space portrait of President Trump.

**V.   Plaintiffs cannot satisfy the remaining criteria for a preliminary injunction.**

In support of the remaining criteria required for a preliminary injunction, Plaintiffs first allege that "[a] substantial threat of harm exists, because if the school year comes and goes with N.T. unable to paint his parking space like all the other students, he will have lost out on that opportunity forever," while "defendants will suffer no harm at all if N.T. is allowed to paint his parking spot." Plaintiffs next claim that "an injunction will not only harm the public interest, it will promote the public interest free speech."

Here, because there is no constitutional violation as shown above, the remaining criteria are mooted. In other words, because N.T. has not been deprived of his freedom of expression in violation of the First Amendment, he has not suffered and is not in danger of suffering irreparable injury. By the same token, Plaintiffs' and/or N.T.'s alleged injury cannot outweigh the harm to Defendants from granting the injunction as it would allow the federal court to intrude into the school board's internal affairs and management. Such an intrusion would, by its very nature, disserve the public interest. For these reasons, Plaintiffs are unable to satisfy the remaining criteria for a preliminary injunction.

**VI.   Conclusion**

Based on the foregoing, Plaintiffs are not entitled to an injunction because they have completely failed to carry their heavy burden to establish any of the four elements necessary for the issuance of preliminary injunction. First, Plaintiffs cannot prevail on the merits of their case as a matter of law because a review of the facts show that Defendants' action of painting over N.T.'s

Trump portrait was constitutionally permissive. Second, because there was no unconstitutional action, Plaintiffs cannot prove irreparable injury or legitimate harm or show that the injunction sought would not disserve the public interest. To the contrary, an injunction would allow the federal court to intrude into the school board's internal affairs and management, which would result in harm to Defendants that would greatly outweigh any harm to Plaintiffs and be a disservice to the public interest. Therefore, Plaintiffs' motion for preliminary injunction should be denied. Defendants respectfully request oral argument on this motion, with live testimony.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Alexandra Roselli Lamb*
CHRISTOPHER A. D'AMOUR (#26252)
ALEXANDRA ROSELLI LAMB (#37847)
LUKE G. LAHAYE (#38809)
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Frances Varnado (in her official capacity) and Washington Parish School Board***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on the all counsel of record via the CM/ECF notification system this 22nd day of September 2020.

*/s/ Alexandra Roselli Lamb*
ALEXANDRA ROSELLI LAMB