# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2425** |
| **FRANCES VARNADO (IN HER OFFICIAL CAPACITY)** | **SECTION "L" (4)** |
| **AND WASHINGTON PARISH SCHOOL BOARD** | |

### ORDER & REASONS

Before the Court is a Motion for a Preliminary Injunction by Plaintiffs, N.T., Alexander Thomas and Stacey Thomas (collectively, "Plaintiffs"). R. Doc. 5. Having considered the applicable law, the parties' arguments, and the evidence addressed during a noticed hearing, the Court now rules as follows.

## I.   BACKGROUND

This case arises from a school board's decision to remove a painting of President Donald Trump on a student's parking spot at Pine Jr/Sr High School in Franklinton, Louisiana. Plaintiffs Alexander and Stacey Thomas seek a preliminary injunction against the Washington Parish School Board and Superintendent Vernado ("Defendants") on behalf of their son N.T., a 17-year old senior student at Pine Jr/Sr High, allowing him to repaint his senior parking spot. R. Doc. 5. Plaintiffs maintain that painting over the Trump portrait violated N.T.'s right to freedom of speech and freedom of expression under the First Amendment.

Washington Parish School System has a tradition of allowing high school seniors to paint their parking spaces for a $25 fee in an effort to foster "school pride and comradery." R. Doc. 5-1 at 2. Under the "Senior Paint Your Parking Space" policy, students must obtain administrative approval of their painting, which cannot contain offensive language, pictures, or symbols, negative

1

or rude language, or the use of another student's name, such as a boyfriend or a girlfriend. *Id.* The painting on N.T.'s parking space portrayed President Trump wearing a stars-and-striped bandana and sunglasses. *Id.* Plaintiffs allege that the Pine Sr. High School principal approved the contents of N.T.'s painted over the summer, but shortly after it was painted, the Superintendent informed the student that the Trump portrait it was "too political" and painted over it with grey paint. *Id.*

## II.    PENDING MOTIONS

Plaintiffs seek a preliminary injunction ordering the Defendants to allow N.T. to re-paint his parking spot because the removal of the painting of President Trump violated N.T.'s First Amendment right to "core political speech." *Id.* at 3. Plaintiffs argue that this case should be analyzed under the pure student expression test set forth in *Tinker v. Des Moines Independent Community School District*. 393 U.S. 503 (1969), which provides that school officials may not restrict student speech solely on the basis of viewpoint, absent a showing that it would be materially disruptive or interfere with school activities. Doc. 5-1 at 4, 5. In support of a preliminary injunction, Plaintiffs argue that they are likely to succeed on the merits of their First Amendment claim under *Tinker*, a substantial threat of harm exists because this school year is N.T.'s only opportunity to have a painted parking spot, and the issuance of an injunction will promote the public interest in free speech. *Id.* at 7.

In response, Defendants counter that Plaintiffs have not met the heavy burden required for the issuance of a preliminary injunction. R. Doc. 11 at 2. Defendants argue that the restriction on N.T.'s speech was viewpoint neutral and permissible in light of the threat of "material and substantial disruption." Defendants assert that their decision was based on concerns about the "particularly contentious" upcoming election that has "resulted in significant divisions not only through the country, but also within the Washington Parish Community." *Id.* at 7, 9. Defendants

express concern that the painting would be offensive to African American students and give rise to an increased risk of vandalism, destruction of property, and fighting in an area of the school where it would be more difficult to control. *Id.* at 9-10. Defendants refer to incidents at other schools across the country, including pro-Trump parking spots being vandalized by "BLM," "FREE THE FAMILIES," and other phrases, to validate these concerns. *Id*. at 8.

In reply, Plaintiffs contend that they are "unaware of any special tumult in Washington Parish" or of any history of division at the school. *Id.* at 2.

### III.   LAW & ANALYSIS

#### a.   Standard for a Preliminary Injunction

Rule 65(a) of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions and allows the court to "advance the trial on the merits and consolidate it with the hearing." Fed.R.Civ.P. 65(a)(2). "A preliminary injunction is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law." *Dennis Melancon, Inc. v. City of New Orleans*, 889 F. Supp. 2d 808, 815 (E.D. La. 2012) To be eligible for a preliminary injunction, the movant must demonstrate the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.,* 847 F.3d 279, 285 (5th Cir. 2017). Courts should issue a preliminary injunction only when the movant "clearly carried the burden of persuasion on all four requirements." Courts view the preliminary injunction as an extraordinary remedy, available only after the movant "by a clear showing, carries a burden of persuasion." *O'Neill v. Louisiana*, 61 F. Supp. 2d 485, 491 (E.D. La. 1998), *aff'd sub nom. O'Neill v. State of La.*, 197 F.3d 1169 (5th Cir. 1999) (citing *Black Fire Fighters Ass'n of*

*Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir.1990)). The trial on the merits has been consolidated with the hearing for the preliminary injunction in this case; therefore, the foregoing also defines the standard for Plaintiffs' to obtain permanent injunctive relief.

Rule 65(c) of the Federal Rules of Civil Procedure provides that the issuance of a preliminary injunction shall take place only "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. However, Fifth Circuit precedent makes clear that in determining the proper amount of security, a court "may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 303 (5th Cir. 1978) (per curium); *see also Humana, Inc. v. Avram A. Jacobson, MD, PA*, 804 F.2d 1390, 1394 & n. 23 (5th Cir.1986) ("[t]he amount of security required is a matter for the discretion of the trial court"); *EOG Res. Inc. v. Beach*, 54 F. App'x 592 (5th Cir. 2002) ("In this circuit, however, courts have the discretion to issue injunctions without security.")[1] In this case, neither the Washington School Board nor the Superintendent is likely to incur any significant monetary damages as a result of the preliminary injunction. Further, the Plaintiffs is a minor student. For these reasons, the Court will exercise its discretion to issue an injunction without security.

### b. First Amendment and Student Speech

It is well-established that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969). However, courts do consider the "special

---

[1] Courts often waive the security requirement when "the plaintiff was vindicating constitutional rights and the court determined that the defendant would not suffer any 'material' damages due to the injunction." Erin Connors Morton, *Security for Interlocutory Injunctions Under Rule 65(c): Exceptions to the Rule Gone Awry*, 46 Hastings L.J. 1863 (Aug. 1995); *See also* Note, *Recovery for Wrongful Interlocutory Injunctions*, 99 Harvard L.Rev. 828, 831 (Feb. 1986) (noting that courts waive the bond requirement when "the restrained defendant would suffer not harm, or the plaintiff was suiting to protect some public interest").

characteristics of the school environment" when applying constitutional principles to high school students. *Id.* Supreme Court case law has revealed four categories of student speech: (1) vulgar, lewd, obscene, or plainly offensive speech under *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); (2) school-sponsored speech under *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); (3) government speech; and (4) pure student expression under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The parties do not dispute that *Tinker* governs this case. The painting of President Trump cannot reasonably be described as obscene or plainly offensive on its face, nor can it be construed as school-sponsored speech. The Court concludes that N.T.'s portrait constitutes pure political speech under the fourth category. Accordingly, the school's actions will be analyzed under the framework that student speech cannot be restricted on the basis of viewpoint "unless there is a showing of material and substantial disruption." *Morgan v. Swason*, 659 F.3d 359, 402 (5th Cir. 2011), *cert denied*, 567 U.S. 905 (2012) (citing *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)).

### c. Discussion

The seminal case *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969) and its progeny control this case. In *Tinker*, the school district prohibited students from wearing black armbands to signify their protest of the Vietnam War and punished seven students who chose to defy the policy. *Id.* at 504, 516. The Supreme Court found this to be an unconstitutional denial of students' right to expression. *Id.* Students cannot be punished "for expressing their personal views on the school premises—whether 'in the cafeteria, or on the playing field, or on the campus during the authorized hours,'—unless school authorities have

reason to believe that such expression will 'substantially interfere with the work of the school or impinge upon the rights of other students.' *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) (citing *Tinker*, 393 U.S. at 509, 512-513).

In order to meet its burden, a school board must prove that its decision was "caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany a certain viewpoint." *Tinker,* 393 F.3d at 509; *see also Shanley v. Ne. Indep. Sch. Dist., Bexar Cty., Tex.,* 462 F.2d 960, 971 (5th Cir. 1972) ("[I]t should be axiomatic at this point in our nation's history that in a democracy 'controversy' is, as a matter of constitutional law, never sufficient in and of itself to stifle the views of any citizen.") The *Tinker* standard will be met by showing a disruption has actually occurred or by showing "demonstrable factors that would give rise to *any reasonable forecast* by the school administration of 'substantial and material' disruption." *Bell v. Itawamba Cty. Sch. Bd*., 799 F.3d 379, 390–91 (5th Cir. 2015) (internal citations omitted). In other words, the School Board does not have to wait for a disruption to actually occur to take action. *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1366 (10th Cir. 2000) ("The fact that a full-fledged brawl had not yet broken out over the Confederate flag does not mean that the district was required to sit and wait for one.") Administrators can satisfy their burden by "establishing that they had a reasonable expectation, grounded in fact, that the proscribed speech would probably result in disruption*." A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224 (5th Cir. 2009). School officials must provide factual support for their decision to stifle speech; however, this is not "a difficult burden." *Shanley*, 462 F.2d at 970. The decision of the school board will govern if "they are within the range where reasonable minds will differ." *Butts v. Dallas Indep. Sch. Dist*., 436 F.2d 728, 732 (5th Cir. 1971).

Therefore, the issue is whether the Superintendent reasonably forecasted that a substantial

and material disruption would likely result from the student's painting of President Trump. In support of the decision to paint over the image, Defendants cite to the "fact that the upcoming election is particularly contentious." R. Doc. 11 at 7. Specifically, the Superintendent was "concerned that the painting would cause further division and disruption among students—similar to that experienced within the school, Parish, community and on social media" *Id.* at 8. Defendants also expressed concern that the painting would give rise to an increased risk of vandalism, destruction of property, and fighting in an area of the school where it would be more difficult to control. *Id.* at 9-10.

As evidence of the disruption that would arise if the painting remained on campus, Defendants discussed a prior incident involving a Confederate flag, stoking tensions at another school in the district. Defendants also referenced a number of conflicts on social media over the summer, in which students who were typically friends were fighting against one another about race and politics. In addition, Defendants pointed to the murder of a black student perpetrated by a white individual during the previous school year that caused significant controversy in the community. Lastly, after the decision was made to paint over the parking spot, the Superintendent received a barrage of messages criticizing the removal of the painting. Defendants maintain that their decision to paint over N.T.'s parking spot stemmed from a desire to avoid controversy and to prevent the student from receiving any negative attention himself.

While the Court acknowledges that school officials are seeking to protect their students, without additional facts describing racial or political tensions at the school connected with the upcoming election, there is no evidence to support that the painting of President Trump would, on its own, cause disruption of school activities, given that it is limited to N.T.'s parking spot and painted in accordance with school rules. ("he may express his opinion, even on controversial

7

subjects if he does so without 'materially and substantially interfering with the requirements of the appropriate discipline in operation of the school' and without colliding with the rights of others.

Ultimately, it is clear that school officials in this case acted based upon "an urgent wish to avoid controversy which might result from the expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 5 (1969).

> "But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans  who grow up and live in this relatively permissive, often disputatious, society."

*Id.* at 508, 509. Based on these facts, the Court finds that Defendants failed to demonstrate that a substantial and material disruption was reasonably foreseeable under the circumstances if the Trump painting were to remain. Thus, the school's removal of the painting restricting N.T.'s political speech  cannot be justified.

N.T.'s painting, while it is certainly a stylized and colorful image, depicts the sitting President of the United States. This is not a case involving a symbol such as a Confederate flag, which has an established meaning as a "symbol of racism and intolerance, regardless of whatever other meanings may be associated with it." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224 (5th Cir. 2009). Moreover, the painting conforms with all Pine Sr. High School rules regarding senior parking spots. In fact, the student obtained the Principal's approval before the parking spot was ever painted. Because the Washington Parish School Board opened its schools for student speech by enacting its "Senior Paint Your Parking Space" policy, the First Amendment requires that students be allowed to express their political views freely, absent any conflict with school

guidelines. N.T. stated that he intended the painting to reflect his support for the President's re-election campaign. Had N.T. worn a Trump lapel pin or displayed a Trump bumper sticker on his car, surely this would have amounted to political speech protected under the First Amendment. The Court sees no difference between those acts of expression and N.T.'s painting at issue here.

In summary, the Court finds that Defendants have not met the *Tinker* standard. Based on the record of the preliminary injunction hearing, Defendants have not provided sufficient evidence that a painting of the current President in the school parking lot is likely to cause a material or substantial disruption. Thus, the Superintendent's action of painting over N.T.'s parking spot constitutes an impermissible violation of N.T.'s right to freedom of expression.

As previously stated, to be entitled for a preliminary injunction, the movant must satisfy the following criteria: 1) irreparable injury; 2) substantial likelihood of success on the merits; 3) favorable balance of hardships; and 4) no adverse effect on the public interest. The Court now considers each factor in turn.

Plaintiffs have met the first and second requirement based on the First Amendment analysis detailed above. First, any constitutional violation constitutes an irreparable injury. *See, e.g., Arnold v. Barbers Hill Indep. Sch. Dist.*, No. 4:20-CV-1802, 2020 WL 4805038, at *12 (S.D. Tex. Aug. 17, 2020) (internal citation omitted) ("It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.") Further, money damages would be inadequate to address Plaintiffs' injury resulting from the loss of his painted parking spot during his senior year and the censoring of his political viewpoint. Second, a finding of unconstitutionality guarantees that the plaintiffs would succeed on the merits. The balance of hardships also supports the issuance of an injunction in his case. While the Court is generally reluctant to interfere with the school board's internal affairs and management and

acknowledges Defendants' significant interest in regulating its students to maintain a safe environment, the burden on Plaintiffs' First Amendment right to free speech and expression outweighs the school's burden of dealing with controversy related to the painting. Lastly, granting a preliminary injunction would promote the general public interest in free speech.

Plaintiffs have successfully met the requirements for the issuance of a preliminary injunction. Accordingly based on the preliminary injunction record, Court will grant Plaintiff's motion.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion of Plaintiffs N.T., Alexander Thomas and Stacey Thomas is **GRANTED**.

**IT IS HEREBY ORDERED** that an injunction be issued ordering the Defendants, the Washington Parish School Board and Superintendent Frances Varnado, to allow the student to re-paint his parking spot.

New Orleans, Louisiana this 9th day of October, 2020.

UNITED STATES DISTRICT JUDGE